## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BONNIE R. WEBB,            )
                               )
               Plaintiff,    )
                               )
           v.             )       1:17CV341
                               )
NANCY A. BERRYHILL,       )
Acting Commissioner of Social   )
Security,                 )
                               )
               Defendant.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Bonnie R. Webb, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 14; see also Docket Entry 10 (Plaintiff's Memorandum), Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of November 28, 2012. (Tr. 210-18.) Upon denial of those applications initially (Tr. 79-108, 147-52) and on reconsideration

(Tr. 109-42, 155-63), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 164-65). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 50-78.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 16-32.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 13-15), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2017.

2.   [Plaintiff] has not engaged in substantial gainful activity since November 28, 2012, the alleged onset date.

3.   [Plaintiff] has the following severe impairments: degenerative disc disease, arthropathies, hyperlipidemia, insomnia, depression, high cholesterol, gastroesophageal reflux disease (GERD), [and] obesity.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform light work . . . . except she cannot climb ladders, ropes, and/or scaffolds. She can occasionally climb stairs and ramps. She must avoid extreme temperatures. She must avoid concentrated exposure to dust, fumes, etc. She can occasionally interact with the public. She can occasionally interact with supervisors and/or coworkers. She is limited to

simple[,] routine, repetitive tasks. She must have a
sit/stand option and be able to change position two times
in one hour.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from November 28, 2012, through
the date of this decision.

(Tr. 21-31 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

_____

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "[t]he ALJ accepted vocational testimony that appears to conflict with the [Occupational Information Network ('O*Net') and the <u>Dictionary of Occupational Titles</u> ('<u>DOT</u>')] yet he failed to obtain an explanation from the [VE]" (Docket Entry 10 at 3 (bold font and single-spacing omitted));

2) "the ALJ found [Plaintiff's] testimony not entirely credible but the ALJ d[id] not give legally sufficient reasons supported by substantial evidence for finding [Plaintiff's] testimony not entirely credible" (<u>id.</u> at 9 (bold font and single-spacing omitted)); and

3) "the ALJ d[id] not give a full function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] mental impairments" (<u>id.</u> at 18 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 5-30.)

## 1. Conflicts Between the VE's Testimony and the O*Net/<u>DOT</u>

In Plaintiff's first issue on review, she contends that the ALJ erred by failing to resolve two apparent conflicts between the VE's testimony and the O*Net and the <u>DOT</u>, respectively, in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"),

and Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015).  (See Docket
Entry 10 at 2-9).  According to Plaintiff, the VE's testimony that
(1) an individual limited to occasional interaction with the
public, coworkers, and supervisors could perform the jobs of Marker
(DOT No. 209.587-034, 1991 WL 671802 (4th ed. rev. 1991)), Final
Inspector (DOT No. 727.687-054, 1991 WL 679672), and Page (DOT No.
249.687-014, 1991 WL 672351) (see Tr. 76-77) conflicts with the
O*Net's description of the degree of interpersonal contact required
by all three jobs (see Docket Entry 10 at 6-7 (citing Docket
Entries 10-1 to 10-3)); and (2) a person restricted to simple,
routine, repetitive tasks ("SRRTs") could perform the three jobs in
question conflicts with the DOT's requirement of Reasoning
Development Level ("RDL") 2 for all three jobs (see id. at 7-8
(citing Docket Entries 10-4 to 10-7)).  Plaintiff's contentions
fall short.

SSR 00-4p places an affirmative duty on an ALJ to elicit an
explanation from the VE as to any "apparent unresolved conflict"
between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally
> should be consistent with the occupational information
> supplied by the [DOT].  When there is an apparent
> unresolved conflict between VE . . . evidence and the
> [DOT], the [ALJ] must elicit a reasonable explanation for
> the conflict before relying on the VE . . . evidence to
> support a determination or decision about whether the
> claimant is disabled.  At the hearings level, as part of
> the [ALJ's] duty to fully develop the record, the [ALJ]
> will inquire, on the record, as to whether or not there
> is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has
not fulfilled his affirmative duty merely because the [VE] responds
'yes' when asked if her testimony is consistent with the [DOT],"
<u>Pearson</u>, 810 F.3d at 208 (internal quotation marks omitted); thus,
"[t]he ALJ <u>independently</u> must identify . . . where the [VE's]
testimony seems to, but does not necessarily, conflict with the
[DOT]," <u>id.</u> at 209 (emphasis added); <u>see also id.</u> (rejecting the
Commissioner's argument that an "apparent" conflict meant only an
"obvious" one).

As relevant to the instant case, the ALJ queried the VE
whether an individual limited to, <u>inter alia</u>, SRRTs and occasional
interaction with the public, coworkers, and supervisors, could
perform any other jobs existing in significant numbers in the
national economy. (<u>See</u> Tr. 76.) In response, the VE opined that
such an individual would remain capable of performing the jobs of
Marker, Final Inspector, and Page, and provided the corresponding
<u>DOT</u> codes for the three jobs, as well as their incidence in the
national economy. (<u>See</u> Tr. 76-77.) The ALJ then asked the VE if
her testimony qualified as "consistent with the information
provided in the [<u>DOT</u>]," and the VE responded as follows:

> Your honor, in regards to a sit stand option, that is not
> a characteristic described in the [<u>DOT</u>] or by the
> supplement publications. I provided this information
> based on a reasonable degree of vocational probability as
> that pertains to my education, vocational training, as
> well as vocational experience with employers, job search,
> job placement, and empirical data and, your honor, I do
> want to mention that the national numbers provided for

the [M]arker position as reduced to reflect 30 percent of
the total numbers for that occupation with respect to
sitting and/or standing.

(Tr. 77.)

The ALJ subsequently adopted the VE's testimony as to
Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-
> exertional limitations] erode the unskilled light
> occupational base, the [ALJ] asked the [VE] whether jobs
> exist in the national economy for an individual with
> [Plaintiff's] age, education, work experience, and [RFC].
> The [VE] testified that given all of these factors the
> individual would be able to perform the requirements of
> representative occupations such as [M]arker, [DOT]
> 209.587-034, considered light exertion, [Specific
> Vocational Preparation ('SVP')] 2, there are 84,000 jobs
> in the national economy; [F]inal [I]nspector, [DOT]
> 727.687-054, considered light exertion, SVP 2, there are
> 50,000 jobs in the national economy; [P]age, [DOT]
> 249.687-014, considered light exertion, SVP 2, there are
> 80,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the [ALJ] ha[s] determined that
> the [VE's] testimony is consistent with the information
> contained in the [DOT] except for information regarding
> a sit/stand option. Nevertheless, the [ALJ] notes the
> [VE's] testimony regarding the sit/stand option is
> sufficient to establish a significant number of jobs that
> [Plaintiff] was able to perform since it was based on her
> own experience and observation.
>
> Based on the testimony of the [VE], the [ALJ] concludes
> that, considering [Plaintiff's] age, education, work
> experience, and [RFC], [Plaintiff] is capable of making
> a successful adjustment to other work that exists in
> significant numbers in the national economy.

(Tr. 31 (emphasis added).)

a. Occasional Interaction with Others

Plaintiff maintains that the RFC's limitation to occasional

interaction with the public, coworkers, and supervisors conflicts

with the O*Net's descriptions of the degree of interaction required by all three jobs cited by the VE (and adopted by the ALJ at step five of the SEP). (<u>See</u> Docket Entry 10 at 6-7 (citing Docket Entries 10-1 to 10-3).) According to Plaintiff, the O*Net reflects that "98% of the [M]arker jobs, 94% of the [F]inal [I]nspector jobs, and 92% of the [P]age jobs appear to require more than occasional interaction with others." (<u>Id.</u> at 6.) Those contentions miss the mark.

SSR 00-4p requires ALJs to identify and resolve apparent conflicts <u>only</u> between the VE's testimony and the <u>DOT</u>. <u>See</u> SSR 00-4p, 2000 WL 1898704, at *2 ("Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [<u>DOT</u>]. When there is an apparent unresolved conflict between VE . . . evidence and the [<u>DOT</u>], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."); <u>Walker v. Berryhill</u>, No. CV 16-01040-KES, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (unpublished) (observing that, apart from the <u>DOT</u>, "SSR 00-4p d[oes] not impose a similar requirement [that the ALJ identify and resolve] conflicts between VE testimony and the other documents administratively noticed in 20 C.F.R. § 416.966(d)")[5]

---

[5] The Commissioner's regulations do not expressly recognize the O*Net as a vocational resource upon which ALJs can rely. <u>See</u> 20 C.F.R. § 416.966(d) (stating that Commissioner "will take administrative notice of reliable job
(continued...)

Moreover, Plaintiff does not cite to any authority to support her argument that ALJs must identify and resolve apparent conflicts between the VE's testimony and the O*Net (see Docket Entry 10 at 6-7), and other courts have rejected Plaintiff's position, see Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013) (unpublished) ("[W]hile the [DOT] appears on the list of governmental and other publications from which the agency can take 'administrative notice of reliable job information,' the O*NET does not. Thus, even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database." (internal citations omitted)); Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009) ("[The p]laintiff argues that the VE's testimony does in fact conflict with the [DOT], despite the VE's statement to the contrary. [The p]laintiff appears to be basing this argument on his application of O*Net. However, [the

---

[5] (...continued)
information available from various governmental and other publications," and listing as "example[s]" the DOT, County Business Patterns ("CBP"), Census Reports, Occupational Analyses prepared for the Commissioner by state employment agencies, and the Occupational Outlook Handbook ("OOH")). However, "the last publication of the [DOT] was in 1991, [and] the last significant update of the occupation information it contains occurred with the 1977 edition." Boston v. Colvin, No. 4:14-CV-206-D, 2016 WL 721563, at *15 (E.D.N.C. Feb. 2, 2016) (unpublished), recommendation adopted, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016) (unpublished) (citing Government Accountability Office ("GAO") Report 12-420, Highlight: Modernizing SSA Disability Programs (June 2012)). As a result, the O*Net has replaced the DOT as the federal government's primary source of occupational information, see http://www.doleta.gov/programs/onet; http://www.onetcenter.org/overview.html, and the Commissioner plans to develop an Occupational Information System to supplant the DOT as the Social Security Administration's primary vocational resource, see 73 Fed. Reg. 78864-01, 2008 WL 5329223 (Dec. 23, 2008); Dimmett v. Colvin, 816 F.3d 486, 489 (7th Cir. 2016) (noting that the Commissioner, "while aware of the obsolescence of the [DOT] . . ., hasn't endorsed the O*NET and . . . is developing its own parallel classification system").

p]laintiff's reliance on O*Net is misplaced. Even if the VE's testimony was in conflict with O*Net, there is no requirement that the VE's testimony comply with that database." (internal citation omitted)); <u>Willis v. Astrue</u>, Civ. No. C08-1198-RSM, 2009 WL 1120027 at *3 (W.D. Wash. Apr. 24, 2009) (unpublished) ("[The] plaintiff provides no basis for relying on a perceived conflict between the O-NET and the VE['s] testimony. . . . SSR 00-4p . . . specifically require[s] the resolution of conflicts between the [<u>DOT</u>] and a VE's testimony. . . . [The p]laintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement.").[6]

---

[6] Research did not reveal any cases finding that an ALJ erred by not identifying and resolving an apparent conflict between the VE's testimony and the O*Net in light of SSR 00-4p. Although courts have remanded cases for the ALJ and/or VE to consider updated job descriptions in the O*Net, those cases occurred not in the context of apparent, unresolved conflicts under SSR 00-4p, but where the obsolescence of the particular <u>DOT</u> job descriptions in question rendered the ALJ's step five finding unsupported by substantial evidence. <u>See, e.g.</u>, <u>Dimmett v. Colvin</u>, 816 F.3d 486, 490 (7th Cir. 2016) (relying on O*Net's more recent job descriptions for self-service laundry and dry cleaning attendant and dining room attendant to demonstrate the "fatally weak testimony" by the VE); <u>Cunningham v. Astrue</u>, 360 F. App'x 606, 615 (6th Cir. 2010) ("[T]he VE's dependence on the [<u>DOT</u>] listings alone does not warrant a presumption of reliability. <u>E.g.</u>, O*NET Resource Center, http://www.onetcenter.org/datacollection.html (last visited Jan. 4, 2010). As such, we remand to the Commissioner for consideration of whether the [<u>DOT</u>] listings, specifically the document preparer and security camera monitor descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ."); <u>Sinclair v. Berryhill</u>, 266 F. Supp. 3d 545, 558-59 (D. Mass. 2017) (remanding case "where . . . more current job descriptions [in the O*Net] raise[d] doubts about the [VE's] (. . . and Commissioner's) reliance on the [<u>DOT</u>'s]" archaic job descriptions); <u>Feeley v. Commissioner of Social Security</u>, No. 14-4970, 2015 WL 3505512 (D.N.J. June 3, 2015) (unpublished) (finding ALJ erred by adopting VE's testimony based on <u>DOT</u>'s obsolete job description for telephone quotation clerk, and deeming O*Net's more updated job description more appropriate for VE's consideration). Here, Plaintiff has not sought relief based on the obsolescence of the <u>DOT</u>'s job descriptions for Marker, Final Inspector, and Page. (<u>See</u> Docket Entry 10 at 6-7.)

In short, Plaintiff has failed to provide the Court with any authority demonstrating that the ALJ labored under an obligation to identify and resolve apparent conflicts between the VE's testimony and the O*Net.

b. RDL 2

Plaintiff maintains that the VE's testimony that an individual limited to SRRTs conflicts with the DOT's job listings for all three jobs cited by the VE, which all reflect a RDL of 2, because RDL 2 entails "the ability to follow oral or written *detailed* instructions." (Docket Entry 10 at 7 (emphasis in original).) Plaintiff notes that the United States Court of Appeals for the Fourth Circuit has "held in an unpublished case, 'that there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and [RDL] 2, which requires the ability to understand detailed instructions.'" (Id. (quoting Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016)).) Plaintiff concedes that Henderson addressed a mental RFC involving only one-to two-step instructions, rather than SRRTs as in the instant case, but argues that "a number of district courts in the Fourth Circuit have since invoked Henderson and found an apparent conflict between [an RDL] of 2 or 3 and a[n RFC] limitation to [SRRTs]." (Id. at 8 (citing Dewalt-Gallman v. Berryhill, Civ. No. 9:16-2332-PMD-BM, 2017 WL 2257418, at *3-4 (D.S.C. May 5, 2017) (unpublished), recommendation adopted, 2017 WL 2225133 (D.S.C. May 22, 2017)

(unpublished), <u>Lorch v. Berryhill</u>, No. 3:16-CV-00076-RJC, 2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017) (unpublished), <u>Adkins v. Berryhill</u>, No. 1:15-CV-000001-RLV, 2017 WL 1089194, at *4 (W.D.N.C. Mar. 21, 2017) (unpublished), and <u>Owens v. Berryhill</u>, Civ. No. 9:15-4830-RMG-BM, 2017 WL 627405, at *7 (D.S.C. Feb. 2, 2017) (unpublished), <u>recommendation adopted</u>, 2017 WL 634696 (D.S.C. Feb. 15, 2017) (unpublished)).) Plaintiff's assertions do not warrant relief.

A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. <u>See generally</u> <u>DOT</u>, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702. A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out <u>simple one- or two-step</u> instructions . . . [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." <u>Id.</u> (emphasis added). In contrast, a position rated at RDL 2 requires a worker to "[a]pply commonsense understanding to carry out <u>detailed but uninvolved</u> written or oral instructions . . . [and] [d]eal with problems involving a few concrete variables in or from standardized situations." <u>Id.</u> (emphasis added).

As an initial matter, <u>Henderson</u>'s facts differ in a material way from the circumstances of the instant case. In that case,

16

because the ALJ specifically limited the claimant to one- to two-step instructions (matching RDL 1), the jobs cited by the VE rated at RDL 2 would require, at a minimum, an ability to understand instructions more complex than one- to two-step instructions.  See Henderson, 643 F. App'x at 276-77.  Because the ALJ did not solicit an explanation from the VE or otherwise resolve that conflict in Henderson, the Fourth Circuit remanded.  Id. at 277-78.  Here, however, the ALJ limited Plaintiff to SRRTs without the additional restriction to one- to two-step instructions.  (See Tr. 27.) Accordingly, Henderson does not compel the Court to find an apparent conflict between the limitation to SRRTs in this case and RDL 2.

Plaintiff also points to post-Henderson district court cases in the Fourth Circuit which have "found an apparent conflict between [an RDL] 2 or 3 and a[n RFC] limitation to [SRRTs]." (Id. at  (citing Dewalt-Gallman, 2017 WL 2257418, at *3-4, Lorch, 2017 WL 1234203, at *5, Adkins, 2017 WL 1089194, at *4, and Owens, 2017 WL 627405, at *7).)  As an initial matter, Lorch, Adkins, and Owens all hold that an apparent conflict exists between SRRTs and RDL 3, a level of reasoning more complex than the RDL of 2 involved in this case and, therefore, those cases should not guide the Court's reasoning here.  See Lorch, 2017 WL 1234203, at *5; Adkins, 2017 WL 1089194, at *4; Owens, 2017 WL 627405, at *7.

Further, although Dewalt-Gallman (and other District of South Carolina cases cited therein) found an apparent conflict between SRRTs and RDL 2, see Dewalt-Gallman, 2017 WL 2257418, at *3-4, the majority of post-Henderson district court cases within the Fourth Circuit, including two recent decisions from other judges of this Court, have found no such conflict between RDL 2 and SRRTs, see Collins v. Berryhill, No. 1:17CV224, 2018 WL 278667, at *5 (M.D.N.C. Jan. 3, 2018) (Webster, M.J.) (unpublished) ("Plaintiff's limitation to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment is not inconsistent with [RDL 2] jobs"), recommendation adopted, slip op. (M.D.N.C. Jan. 25, 2018) (Eagles, J.); Lawrence v. Berryhill, No. 1:16CV1310, slip op. at 5-6 (M.D.N.C. Nov. 17, 2017) (Webster, M.J.) (unpublished) ("The majority of courts that have considered this issue have concluded, either explicitly or implicitly, that a limitation to SRRTs is not inconsistent with the performance of [RDL 2]." (collecting cases)), recommendation adopted, slip op. (M.D.N.C. Dec. 20, 2017) (Eagles, J.); Testamark v. Berryhill, No. 3:16CV202 (REP), 2017 WL 4544899, at *11 (E.D. Va. Aug. 21, 2017) (unpublished) ("[T]he ALJ limited Plaintiff to simple, routine tasks consistent with the detailed yet uninvolved instructions involved in positions requiring [RDL] 2. Had the record supported an RFC that restricted [the p]laintiff to no more than one-to two-step instructions, like the claimant in Henderson,

then an apparent conflict would have existed for the ALJ to address. But [the p]laintiff's case presents no such conflict. Thus, the ALJ discharged her responsibility when she asked the VE about the consistency between his opinion and the [DOT]. Because no apparent conflict existed — and not merely because the VE testified that none existed — the ALJ did not need to obtain further explanation."), recommendation adopted, 2017 WL 4544893 (E.D. Va. Oct. 11, 2017) (unpublished); Roundtree v. Berryhill, No. 4:15-CV-00154-F, 2017 WL 398368, at *3 (E.D.N.C. Jan. 30, 2017) (unpublished) (deeming Henderson "distinguishable" and finding no apparent conflict between SRRTs and RDL 2).

As no apparent conflict existed between the RFC's limitation to SRRTs and the RDL of 2 required by the VE's cited jobs, the ALJ did not err by failing to identify and resolve such conflict.

In sum, Plaintiff's first issue on review fails as a matter of law.

## 2. Credibility Analysis

Plaintiff next asserts that "the ALJ found [Plaintiff's] testimony not entirely credible but the ALJ d[id] not give legally sufficient reasons supported by substantial evidence for finding [Plaintiff's] testimony not entirely credible." (Docket Entry 10 at 9 (bold font and single-spacing omitted).) In particular, Plaintiff criticizes the ALJ's use of "meaningless boilerplate" in finding that Plaintiff's "'medically determinable impairments could

19

reasonably be expected to cause the alleged symptoms,'" but that Plaintiff's "'statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely credible for the reasons explained in th[e] decision.'" (Id. at 9 (quoting Tr. 28, and citing Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010)).) Moreover, Plaintiff faults the ALJ for discounting Plaintiff's symptom reporting on the grounds that (1) "'[a] claimant's limited use of pain medication, failure to even fill prescription[s] prescribed for only mild to moderate pain, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling'" (id. at 12 (quoting Tr. 30)); and (2) "'the record d[id] not contain any opinions from treating or examining physicians indicating that [Plaintiff] [wa]s disabled or even ha[d] limitations greater than those determined in this decision'" (id. at 13 (quoting Tr. 29)). Plaintiff's arguments do not establish entitlement to reversal or remand.

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for

evaluating a claimant's statements about symptoms.[7] "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities . . . shown by medically acceptable clinical diagnostic techniques") and laboratory findings ("anatomical, physiological, or psychological phenomena . . . shown by the use of medically acceptable laboratory diagnostic techniques"). 20 C.F.R. §§ 404.1528, 416.928.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Craig, 76 F.3d at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements
> about her pain, but also all the available evidence,
> including the claimant's medical history, medical signs,
> and laboratory findings, any objective medical evidence

---

[7] Applicable to ALJ decisions on or after March 28, 2016, the SSA superseded SSR 96-7p with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." SSR 16-3p, 2017 WL 5180304, at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. As the ALJ's decision in this case pre-dates the effective date of SSR 16-3p (see Tr. 32), this Recommendation will apply SSR 96-7p to the ALJ's analysis of Plaintiff's subjective complaints.

of pain (such as evidence of reduced joint motion, muscle
spasms, deteriorating tissues, redness, etc.), and any
other evidence relevant to the severity of the
impairment, such as evidence of the claimant's daily
activities, specific descriptions of the pain, and any
medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).
"[A]llegations concerning the intensity and persistence of pain or
other symptoms may not be disregarded solely because they are not
substantiated by objective medical evidence." SSR 96-7p, 1996 WL
374186, at *6 (emphasis added). In other words, "the absence of
objective medical evidence supporting an individual's statements
about the intensity and persistence of pain or other symptoms . . .
must be considered in the context of all the evidence." Id.

The ALJ here found for Plaintiff on part one of the symptom
reporting inquiry, but ruled, in connection with part two, that her
"statements concerning the intensity, persistence and limiting
effects of [her] symptoms [we]re not entirely credible for the
reasons explained in th[e] decision." (Tr. 28.) In making the
part two finding, the ALJ discussed Plaintiff's testimony and a
Function Report completed by Plaintiff's mother (see Tr. 27-28),
evaluated and weighed the opinion evidence (see Tr. 28-29), and
then found as follows:

The evidence shows [Plaintiff's] excess weight reasonably
contributes to her knees and back pain and limits her
ability to perform strenuous activities such as heavy
lifting. However, her obesity and associated pain does
not preclude her from p[er]forming light levels of work
activity as illustrated by the objective medical evidence
and [Plaintiff's] activities of daily living.

> A claimant's limited use of pain medication, failure to
> even fill prescription[s] prescribed for only mild to
> moderate pain, failure to sustain any consistent medical
> regimen for treatment, lack of hospitalizations or
> emergency room visits, or other significant treatment for
> pain constitute specific evidence which supports an
> acceptable credibility determination that pain and other
> symptoms are not disabling.  Hunter v. Sullivan, 993
> F[.]2d[] 31 (4th Cir. 1992).
>
> In sum, [Plaintiff's] combined physical and mental
> impairments are severe but would not prevent her from
> meeting the basic demands of regular work on a sustained
> basis.  While [Plaintiff] is likely to experience many of
> the symptoms and functional limitations complained of,
> the evidence does not support her allegations that she
> would not be able to work and is disabled within the
> meaning of the . . . Act.

(Tr. 29-30 (emphasis added).)[8]

As an initial matter, Plaintiff's challenge to the above-quoted language as "meaningless boilerplate" (Docket Entry 10 at 9) falls short.  As Plaintiff concedes (see id.) and as the record reflects (see Tr. 28), the ALJ here did not use the boilerplate that the Fourth Circuit deemed problematic, see Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015) (ruling ALJ's finding that the claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the . . . [RFC] assessment . . . gets things backwards by implying that ability to work is determined first and is then used to determine the claimants

---

[8] Earlier in the decision, in connection with the ALJ's evaluation of the severity of Plaintiff's impairments at step two of the SEP, the ALJ provided a detailed discussion of the medical evidence of record (see Tr. 21-24), which also included a description of Plaintiff's daily activities (see Tr. 22).

credibility" (emphasis added) (internal quotation marks and citation omitted)); see also Linares v. Colvin, No. 14-120, 2015 WL 4389533, at 86 (W.D.N.C. July 17, 2015) (unpublished) (finding language similar to phrasing used by ALJ here "distinguishable from the now suspect boilerplate language used in Mascio" because "the ALJ's language does not suggest that he first assessed [the p]laintiff's RFC and used that assessment to determine credibility").

Plaintiff next criticizes the ALJ for failing to "point to any evidence that substantiate[d] his statement that [Plaintiff] [wa]s using pain medication limitedly or ha[d] not filled any prescriptions for pain medication." (Docket Entry 10 at 12 (referencing Tr. 30).) According to Plaintiff, she "testified that she t[ook] hydrocodone for pain" (id. (citing Tr. 75)), and "the Court may not mine the facts in the record to justify the ALJ's decision" (id. (citing Brown v. Colvin, 639 F. App'x 921 (4th Cir. 2016), Fox v. Colvin, 632 F. App'x 750 (4th Cir. 2015), Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013), and Cook v. Heckler, 783 F.2d 11689, 1173 (4th Cir. 1986))).

The Court should not find prejudicial error with respect to the ALJ's statement that "[a] claimant's limited use of pain medication, failure to even fill prescription[s] prescribed for only mild to moderate pain, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or

emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling." (Tr. 30.) As an initial matter, the ALJ's use of the phrase "[a] claimant's" (id. (emphasis added)) rather than "the claimant's" suggests the ALJ intended that paragraph to serve as a recitation of Fourth Circuit law, without conveying that each of the Fourth Circuit's listed grounds for finding pain and other symptoms not disabling applied to Plaintiff in particular.

Moreover, even assuming the ALJ actually found that all of the grounds described applied to Plaintiff, Plaintiff has not shown that the ALJ's findings in that regard amounted to prejudicial error. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ's earlier, step two discussion of the medical evidence of record included specific observations that supported most of the grounds in question for discounting Plaintiff's symptom reporting. Regarding Plaintiff's limited use of pain medication, the ALJ noted that Plaintiff "contacted Sports Medicine and Injury Care on September 30, 2013, with increased pain in her back and legs and requested a refill of hydrocodone[,]" but observed that "[i]t had been a year since

25

[Plaintiff] was seen, so an appointment was scheduled" to authorize the refill. (Tr. 22.) Concerning Plaintiff's failure to sustain any consistent medical regimen, the ALJ identified gaps in Plaintiff's orthopedic treatment from September 2012 to September 2013 (see Tr. 21-22), and from October 2013 to October 2014 (see Tr. 23-24). The ALJ's summarization of the medical evidence of record supports his observation that Plaintiff did not undergo any hospitalizations or visit the emergency room for her pain during the relevant period, and treated her pain non-surgically with two transforaminal epidural steroid injections and pain medication. (See Tr. 21-24.) With respect to the ALJ's statement that Plaintiff "fail[ed] to even fill prescription[s] for only mild to moderate pain" (Tr. 30), as discussed above, the ALJ did note that Plaintiff allowed her hydrocodone prescription to lapse, necessitating an office visit in September 2013 to renew the prescription (see Tr. 22).

Further, to the extent the ALJ did not sufficiently support some of the grounds under Hunter for discounting Plaintiff's symptom reporting, no prejudicial error occurred because, as discussed above, the ALJ relied on other, permissible bases amounting to substantial evidence to discount Plaintiff's subjective complaints. See Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons,

harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that, "so long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (quoting Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004))); Stinnett v. Colvin, No. CV-13-3115-FVS, 2014 WL 6879074, at *6 (E.D. Wash. Dec. 4, 2014) (unpublished) (deeming ALJ's credibility analysis error "harmless because . . . the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence"); Baker ex rel. C.S.A. v. Astrue, No. 1:11-CV-00592-WTL, 2012 WL 3779213, at *6 (S.D. Ind. Aug. 31, 2012) (unpublished) (finding ALJ's error involving one particular credibility factor harmless because, "[g]iven the analysis the ALJ engaged in with respect to the SSR 96-7p factors, . . . proper consideration of alternative explanations with respect to this single factor would not have changed the outcome").

Plaintiff additionally maintains that the ALJ erred by discounting Plaintiff's symptom reporting on the grounds that "the record d[id] not contain any opinions from treating or examining physicians indicating that [Plaintiff[ [wa]s disabled or even ha[d]

limitations greater than those determined in th[e] decision."
(Docket Entry 10 at 13 (referencing Tr. 29).)  Plaintiff deems this
statement "an unsupported negative inference" in that, by making
the statement, "[t]he ALJ ruled that[,] because [Plaintiff] did not
submit a medical source statement from a treating source[,] that
they [sic] believed, as a matter of fact, that [Plaintiff] did not
have any functional limitation due to her medical impairments and,
moreover, was not disabled."  (Id.)  Plaintiff then proffers ten
arguments against such a negative inference.  (See id. at 13-17.)

The Court need not address each of Plaintiff's ten arguments,
as they proceed from a faulty premise.  The ALJ's statement merely
expresses a fact supported by the record – that no treating or
examining source of record provided an opinion that Plaintiff
qualified as disabled or that contained limitations greater than
those in the RFC. (See Tr. 29.)  The statement occurs, logically,
at the conclusion of the ALJ's evaluation and weighing of all
existing medical opinions of record.  (See id.)  Plaintiff's
interpretation of that straightforward (and accurate) statement by
the ALJ as a "rul[ing]" that Plaintiff's treating sources "believed
. . . that [Plaintiff] did not have any functional limitation due
to her medical impairments and . . . was not disabled" constitutes
an unwarranted contortion of the ALJ's words.

Plaintiff's contention that the ALJ failed to develop an
adequate record, because he failed to obtain any opinions regarding

Plaintiff's functional limitations from her treating and/or examining sources (see Docket Entry 10 at 17 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d))) lacks any merit.  The ALJ's duty to further develop the record arises when an inconsistency or conflict in the evidence requires resolution or when insufficient evidence exists to assess an impairment.  See 20 C.F.R. §§ 404.1519a(b), 416.919a(b); Foster v. Halter, 279 F.3d 348, 355–56 (6th Cir. 2001).  "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, Cook, 783 F.2d at 1173, [the ALJ] is not required to function as the claimant's substitute counsel[.]"  Bell v. Chater, No. 95-1089, 57 F.3d 1065 (table), 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished) (internal quotation marks omitted) (citing Clark v. Shalala, 28 F.3d 828, 830–31 (8th Cir. 1994)).

Here, the Social Security Administration ordered two consultative examinations, psychological and physical.  (See Tr. 397-99, 401-04.)  Moreover, the ALJ asked Plaintiff's counsel at the outset of the hearing if she had any objection to the exhibits of record, to which Plaintiff's counsel responded: "No objection." (Tr. 52.)  At the conclusion of the hearing, Plaintiff's counsel neither asked the ALJ to hold the record open so that counsel could obtain medical opinions from Plaintiff's treating and/or examining sources, nor requested the ALJ to obtain such opinions himself. (Tr. 78.)  Having failed to raise the issue of missing opinion

evidence at the hearing, Plaintiff cannot wait until after the ALJ issues his decision to challenge the ALJ's development of the record.  See Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (holding duty to develop record "does not permit a claimant, through counsel, to rest on the record — indeed, to exhort the ALJ that the case is ready for decision — and later fault the ALJ for not performing a more exhaustive investigation"); Gatling v. Astrue, Case No. 2:211-cv-0021-FL, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (unpublished) (rejecting argument that ALJ failed to develop record where claimant's counsel neither advised ALJ that record lacked any evidence nor requested ALJ's assistance in procuring additional materials).

Accordingly, the ALJ did not commit prejudicial error with respect to his analysis of Plaintiff's subjective complaints, and her allegations of error thus fail as a matter of law.

### 3. Mental RFC

In Plaintiff's third and final assignment of error, she alleges that "the ALJ d[id] not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and d[id] not make a complete finding as to [Plaintiff's] mental [RFC]" (id. at 18 (bold font and single-spacing omitted)), in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in

<u>Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), and

<u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) (<u>see</u> <u>id.</u> at 18-24).

In particular, Plaintiff attacks the sufficiency of the mental RFC

in two respects: the ALJ (1) failed to "provide the required

detailed assessment of the effect of [Plaintiff's] difficulties in

social functioning on h[er] ability to engage in sustained work

activities" (<u>id.</u> at 20 (bold font and single-spacing omitted)); and

(2) did not "account for [Plaintiff's] difficulties with

concentration, persistence or pace [('CPP')]" or "make a finding as

to [her] ability to stay on task" (<u>id.</u> at 21 (bold font and single-

spacing omitted)). Those arguments fail as a matter of law.

At steps two and three of the SEP, the ALJ must assess the

degree of functional limitation resulting from Plaintiff's mental

impairments pursuant to criteria in the corresponding mental

disorders in the listing of impairments. <u>See</u> 20 C.F.R. Pt. 404,

Subpt. P, App'x 1, § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c)(2),

416.920a(b)(2) & (c)(2). As relevant to the instant case,

paragraphs B of Listing 12.04 ("Affective Disorders") contains four

broad functional areas: 1) activities of daily living; 2) social

functioning; 3) concentration, persistence, or pace; and 4)

episodes of decompensation. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x

1, § 12.04B; <u>see also</u> 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The ALJ's decision must include a specific finding of the degree of

limitation in each of those functional areas. 20 C.F.R.

§§ 404.1520a(e)(4), 416.920a(e)(4). However, the paragraph B criteria limitations do not constitute an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (emphasis added). Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP. Id.

"The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C," id., and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," id. at *6. Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question. See Yoho v. Commissioner of Soc. Sec., No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to hypothetical question(s)); accord Patterson v. Astrue, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

a. Social Functioning

Although Plaintiff concedes that the ALJ significantly restricted Plaintiff's contact with the public, co-workers, and

supervisors to accommodate Plaintiff's moderate limitation in social functioning (see Docket Entry 10 at 21; see also Tr. 27), he faults the ALJ for failing to "explain [Plaintiff's] ability to accept instructions and respond appropriately to criticism from supervisors" (id.). According to Plaintiff, "[t]his omission by the ALJ is not harmless[,]" because "the ability to accept instructions and respond appropriately to criticism from supervisors is a critical mental ability for performing unskilled work." (Id. (citing Program Operations Manual System ("POMS") §§ DI 25020.010B.2.c, 25020.010B.3.k).) This line of argument entitles Plaintiff to no relief.

The criterion regarding a claimant's ability to accept instructions and respond appropriately to criticism from supervisors appears in the portion of the mental RFC form which the state agency psychological consultants use as "merely a worksheet to aid in deciding the presence and degree of functional limitations . . . and does not constitute the RFC assessment," POMS § DI 24510.060B.2.a (bold font omitted). (See Tr. 89, 121.) The state agency consultants assess the actual mental RFC in the narrative portions of the form, see POMS § DI 24510.060B.4. (See, e.g., Tr. 90, 122.)

Here, despite assessing moderate limitation in accepting instructions and responding to criticism (see Tr. 89, 121), the state agency psychological consultants concluded in the narrative

33

portions of the mental RFC form that Plaintiff could "interact[]
appropriately with others in social work environments" (Tr. 89),
"would probably do best in settings with minimal social demands"
(Tr. 121), and retained the mental capacity to perform SRRTs (see
Tr. 90, 122).  The ALJ did not err by failing to specifically
incorporate the consultants' moderate limitation in accepting
instructions and responding appropriately to criticism into the
mental RFC, and relying instead on the consultants' narrative
mental RFC assessment. See Jones v. Commissioner of Soc. Sec., 478
F. App'x 610, 612 (11th Cir. 2012) (rejecting claimant's contention
that ALJ should have accounted in RFC for moderate limitations
identified on mental RFC assessment form, and noting that
limitations "are only part of a worksheet that does not constitute
the doctors' actual RFC assessment" (brackets and internal
quotation marks omitted)); Smith v. Commissioner of Soc. Sec., 631
F.3d 632, 636-37 (3d Cir. 2010) (finding no error where ALJ did not
include in hypothetical question moderate limitations contained in
worksheet part of mental RFC form, noting that such findings "may
be assigned little or no weight," and further concluding that the
claimant could not "rely on the worksheet component" of mental RFC
form); Johansen v. Barnhart, 314 F.3d 283, 288-89 (7th Cir. 2002)
(upholding ALJ's reliance on specific mental RFC assessment that
the claimant could perform low-stress, repetitive work, rather than
subsidiary findings of moderate limitations in his ability to

maintain a regular schedule and attendance and to complete a normal workday and workweek without interruptions from psychologically-based symptoms); Schurr v. Colvin, Civ. No. 12-C-0969, 2013 WL 1949615, at *15 (E.D. Wis. May 9, 2013) (unpublished) ("The ALJ did not err in crediting the more specific, narrative portion of [the state agency consultant's] report, rather than the check-boxes.").

Moreover, Plaintiff neither disputes the ALJ's finding of moderate limitation in social functioning (see Tr. 26), nor makes any attempt to show how a moderate limitation in social functioning should have further impacted the ALJ's RFC beyond the limitation to occasional interaction with the public, coworkers, and supervisors. (See Docket Entry 10 at 21.) Simply put, Plaintiff has not shown any error in the ALJ's decision-making with regard to Plaintiff's social functioning.

b.    CPP

Plaintiff maintains that the ALJ failed to account for Plaintiff's moderate deficits in CPP in the mental RFC determination. (See Docket Entry 10 at 21-24.) In that regard, Plaintiff argues that, pursuant to Mascio, "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work . . . [because] the ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation

would account for a claimant's limitation in [CPP].'" (Id. at (quoting Mascio, 780 F.3d at 638 (internal quotation marks omitted)).) According to Plaintiff, "[t]he ALJ mistakenly discusse[d] only [Plaintiff's] *capability* to *perform* [SRRTs], not her *ability* to *stay on task*." (Id. at 23 (emphasis in original).) Plaintiff additionally faults the ALJ for according "significant weight" to the opinions of consultative psychological examiner Dr. Chad Ritterspach (Tr. 28), but then failing to incorporate Dr. Ritterspach's "endorse[ment]" of Plaintiff's "report that she ha[d] impaired ability to sustain attention to perform simple, repetitive tasks" into the mental RFC (Docket Entry 10 at 23 (citing Tr. 398)). Plaintiff's arguments do not warrant relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why limitations in the RFC to SRRTs and occasional interaction with the public, coworkers, and supervisors (see Tr. 27) sufficiently accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ summarized the mental health evidence, making the following, pertinent observations:

- Dr. Ritterspach found that Plaintiff's "memory and concentration were within normal limits" (Tr. 22 (emphasis added); see also Tr. 398);

- Dr. Ritterspach "assigned a Global Assessment of Functioning of 58, which was indicative of mild symptoms in social and occupational functioning" (Tr. 22 (emphasis added); see also Tr. 398);[9]

- Plaintiff reported to Dr. Ritterspach that "she had never been in talk therapy, never been hospitalized for depression or any other psychiatric conditions[,]" and "had not been treated for some time" for mental health until the month prior to Dr. Ritterspach's evaluation (Tr. 22; see also Tr. 397);

---

[9] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A GAF of 51 to 60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) . . . OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Id. (bold font omitted). A GAF of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. (bold font omitted). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

- Plaintiff described daily activities such as reading, writing, following directions, organizing her day, watching television, checking her Facebook account several times per day, driving, and managing her finances (Tr. 22; see also Tr. 398).

Second, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 26, 28-29.) Notably, the ALJ provided the following analysis regarding Plaintiff's ability to sustain CPP:

> With regard to [CPP], . . . [b]oth [s]tate agency consultants found that [Plaintiff] had moderate limitations. Dr. [Bonny] Gregory concluded that [Plaintiff] was capable of sustaining [CPP] in order to perform [SRRTs]. Dr. [Lori Brandon-]Souther provided the same conclusion. The [ALJ] agrees with the consultants and has imposed these limitations in the [RFC].

(Tr. 26 (emphasis added) (internal citation omitted).)

Those two elements of the ALJ's decision adequately supported the conclusion that, despite moderate limitation in CPP, Plaintiff remained capable of performing SRRTs with occasional interaction with the public, coworkers, and supervisors. See Sizemore v. Berryhill, 2017 WL 467712, at *6 (4th Cir. Oct. 17, 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

Lastly, Plaintiff faults the ALJ for failing to incorporate into the mental RFC Dr. Ritterspach's "endorse[ment]" of Plaintiff's "report that she has impaired ability to sustain

attention to perform simple, repetitive tasks." (Docket Entry 10 at 23 (citing Tr. 398).) However, the context of Dr. Ritterspach's opinions does not support Plaintiff's interpretation of an "endorsement." Dr. Ritterspach opined that Plaintiff's "psychological distress <u>impairs</u> her motivation to engage in valued activities," that "[s]he <u>has</u> adequate verbal reasoning and mathematical skills," that "[s]he <u>can ascertain</u> the dangerousness of everyday situations and <u>knows</u> the necessary action to avoid physical danger," that "[s]he <u>can understand, retain, and follow</u> directions," that "[s]he <u>has</u> adequate ability to relate to others including fellow works and supervisors," and that "[s]he <u>has</u> adequate ability to tolerate the mental stress and pressures associated with day-to-day work activity." (Tr. 398 (emphasis added).) However, regarding Plaintiff's ability to "sustain attention to perform simple, repetitive tasks," Dr. Ritterspach chose, <u>for that ability only</u>, to state that Plaintiff "<u>reported</u> impaired ability." (<u>Id.</u> (emphasis added).) Had Dr. Ritterspach "endorsed" Plaintiff's report of impaired ability to sustain attention, he likely would have, consistent with his other opinions, stated that Plaintiff <u>has</u> impaired ability to sustain attention. That interpretation finds further support from the fact that Dr. Ritterspach found that Plaintiff's "memory and <u>concentration</u> were within normal limits." (<u>Id.</u> (emphasis added).)

Under these circumstances, the ALJ adequately explained why limitations to SRRTs and occasional interaction with the public, coworkers, and supervisors (see Tr. 27) sufficiently accounted for Plaintiff's moderate limitation in CPP.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 14, 2018